GEORGE S. CARDONA
Acting United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
PATRICK R. FITZGERALD
Assistant United States Attorney
Acting Chief, National Security Section
ROZELLA A. OLIVER (SBN 250488)
ANTHONY J. LEWIS (SBN 231825)
Assistant United States Attorneys
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-2475/1786
    Facsimile:  (213) 894-6436
    E-Mail: rozella.oliver@usdoj.gov
        anthony.lewis@usdoj.gov

Attorneys for Applicant
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 09-1344(A)-VBF |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT AVANESSIAN'S MOTION FOR RELEASE ON BOND PENDING TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS |
| v. | |
| JIRAIR AVANESSIAN,<br>  aka "Jerry Avanessian,"<br>  aka "Jerry Avanes," and<br>FARHAD MASOUMIAN,<br>  aka "Farhad Ma'sumiyan,"<br>  aka "Farhad Ma'sumian,"<br>  aka "Farhad Masouiman,"<br>  aka "Farhad Masumian,"<br>  aka "Farhad Masumiyan,"<br>AMIRHOSSEIN SAIRAFI,<br>  aka "Amir Hossein Sairafi," | |
| Defendants. | |

    Plaintiff United States of America, by and through its counsel of record the United States Attorney for the Central District of California, hereby files this Opposition to Defendant Avanessian's Motion for Release on Bond Pending Trial.  Pretrial

detention of defendant Avanessian is appropriate because no condition or combination of conditions will reasonably assure the appearance of the defendant at trial and his release will present a danger to the community.  This Opposition is based on the attached Memorandum of Points and Authorities, the attached exhibits, the files and records of this case, and any argument or evidence presented at the hearing on this matter.

DATED: February 5, 2010        Respectfully submitted,

                                      GEORGE S. CARDONA
                                      Acting United States Attorney

                                      CHRISTINE C. EWELL
                                      Assistant United States Attorney
                                      Chief, Criminal Division

                                              /s/
                                      ROZELLA A. OLIVER
                                      ANTHONY J. LEWIS
                                      Assistant United States Attorney

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**

**INTRODUCTION**

Defendant Avanessian has been detained pending trial, and moves the Court to release him on bond. Defendant Avanessian has significant connections and relationships with individuals in Iran, the country from which he immigrated. Defendant Avanessian has remained in extensive e-mail and telephone communication with persons in Iran, maintained bank accounts and a store in Iran, received hundreds-of-thousands of dollars, or more, from entities in Iran, and has traveled there nearly annually since becoming a Lawful Permanent Resident in 2000.

The vacuum pumps and other related equipment ("vacuum-pump parts") defendant Avanessian purchased in the United States and shipped to Iran have a number of advanced technological applications. Even after a shipment sent by defendant Avanessian was seized in February 2009 and a search warrant was executed in April 2009 at defendant's residence and business, defendant Avanessian or someone on behalf of his then-unincorporated business XVAC had contacted a vacuum supplier to place an order.

Because of defendant's significant connections to Iran, and his continued activity in procuring vacuum equipment, no condition or combination of conditions will assure his appearance as necessary and protect the safety of the community.

**II**

**FACTUAL BACKGROUND**

Defendant Avanessian is charged with exporting and attempting to export vacuum-pump parts to Iran without the

required license, conspiring to do so, money laundering, and smuggling vacuum-pump parts out of the United States contrary to law or regulation, as set forth in further detail below.

Defendant Avanessian would communicate and coordinate with co-defendants Farhad Masoumian and Amirhossein Sairafi about the procurement, purchase, and export of vacuum-pump parts from the United States to Iran via the United Arab Emirates ("U.A.E."). Defendant Avanessian would receive from defendant Masoumian, who would at times forward requests on behalf of defendant Sairafi, and from others requests to obtain price quotations for goods and technology sought by companies and persons in Iran.  Defendant Avanessian, doing business as XVAC, would obtain price quotations for such vacuum-pump parts.  After receiving orders from defendant Masoumian and others, defendant Avanessian purchased those parts using personal credit cards in his own name.

Defendant Avanessian then arranged to ship the goods and technology to defendant Sairafi at AVAC FZC in the U.A.E., making it appear that the ultimate destination of the vacuum-pump parts was the U.A.E.  The defendants, however, knew that the vacuum-pump parts were destined for Iran, and the vacuum-pump parts were then transshiped there from the U.A.E.

In arranging to export the parts from the United States, defendant Avanessian falsely undervalued the shipments to the U.A.E. to reflect a value under $2,500 to avoid the filing requirements of the Shipper's Export Declaration, the filing of which may have caused greater scrutiny by United States Customs and Border Protection Officers.  Furthermore, defendant Avanessian, after coordination between defendants Masoumian and

2

Sairafi, would re-label the contents of the shipments in shipping paperwork to make the descriptions sound more generic and less technical.  This was also done in order to avoid detection or interception by U.S. Customs and Border Protection.

Defendant AVANESSIAN also received international wire transfers in amounts that were typically between $75,000 and $150,000 from defendant Masoumian or others that funded in whole or in part the purchase and export of the vacuum-pump parts defendant Avanessian was sending to Iran.

## III

## **PRIOR PROCEEDINGS**

The charges against defendant are set forth in the First Superseding Indictment dated January 20, 2010.  Defendant Avanessian is charged in Count One with violating 18 U.S.C. § 371 (Conspiracy to export vacuum-pump parts to Iran), in Counts Fifteen through Thirty-Six with violating 50 U.S.C. § 1705 and 31 C.F.R. §§ 560.203, 560.204, and 560.701 (Exporting and attempting to export vacuum-pump parts to Iran in violation of the International Emergency Economic Powers Act, "IEEPA," and the Iranian Transactions Regulations "ITR"), in Count Thirty-Seven with violating 50 U.S.C. § 1705 and 31 C.F.R. §§ 560.203, 560.204, and 560.701 (Attempting to export vacuum-pump parts to Iran in violation of IEEPA and the ITR), in Count Forty-Two with violating 18 U.S.C. § 1956(a)(2)(A) and (h) (Conspiracy to launder money), in Counts Forty-Three through Forty-Eight with violating 18 U.S.C. § 1956(a)(2)(A) (Money laundering), in counts Fort-Nine through Fifty-Four with violating 18 U.S.C. § 554 (smuggling vacuum-pump parts out of the United States contrary to

law or regulation), and in Count Fifty-Five with violating 18 U.S.C. § 554 (attempting to smuggle vacuum-pump parts out of the United States in contrary to law or regulation).

Defendant was arrested on January 11, 2010.

Defendant's initial appearance occurred on January 11, 2010 before the Honorable Victor B. Kenton, United States Magistrate Judge. At that initial hearing Judge Kenton ordered defendant Avanessian detained pending trial. The Pre-Trial Services Agency ("PSA") had recommended detention.

Defendant was then arraigned on the original Indictment, which was filed on December 30, 2009, on January 18, 2010. Defendant was arraigned on the First Superseding Indictment on January 28, 2010 before the Honorable Valerie B. Fairbank, United States District Judge, at which time a status conference was held and a briefing and hearing schedule was set for defendant Avanessian's Motion for Release on Bond Pending Trial.

## IV

## ARGUMENT

**A.  Standard of Review**

This Court's review of the decision of the magistrate judge is de novo. <u>United States v. Koening</u>, 912 F.2d 1190, 1192-93 (9th Cir. 1990).

**B.  The Bail Reform Act**

The Bail Reform Act of 1984 ("the Act") permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate

where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. <u>United States v. Motamedi</u>, 767 F.2d 1403, 1406 (9th Cir. 1985); <u>United States v. Kouyoumdjian</u>, 601 F. Supp. 1506, 1508-10 (C.D. Cal. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. <u>Motamedi</u>, 767 F.2d at 1406.

Several factors are relevant to the Court's consideration of whether pretrial detention is appropriate: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); <u>United States v. Winsor</u>, 785 F.2d 755 (9th Cir. 1986); <u>Motamedi</u>, 767 F.2d at 1407.

The weight of the evidence is the least important of the factors and the statute neither requires not permits a pretrial determination that the person is guilty. <u>Winsor</u>, 785 F.2d at 757. However, the nature of the offense and the evidence of guilt is relevant to indicate the likelihood that the person will fail to appear or will pose a danger to the community. <u>Id</u>.

**C.  <u>Defendant is a Flight Risk</u>**

Defendant Avanessian has maintained significant and continuous contacts with Iran, and at this time no combination of

5

condition or combination of conditions will reasonably assure his appearance at trial. Though members of defendant Avanessian's family currently reside in this District and elsewhere in the United States, his incentive and means to flee are apparent.

Defendant Avanessian's relationships and contacts with persons and entities in Iran include the following:

1. Defendant Avanessian received approximately $514,811.82 in wire transfers that originated in Iran, as alleged in Counts Forty-Three through Forty-Eight of the First Superseding Indictment;

2. Defendant Avanessian also maintains at least one "parsian bank account" using "toomans," and at one point directs an individual that "[f]or the money you could keep there put on that account." (Exhibits A-D, all of which were seized from defendant Avanessian's computer pursuant to a search warrant; Exhibit D contains a Farsi-to-English translation);[1]

3. Defendant Avanessian appears to have maintained a "store in Tehran" years after he immigrated to the United States. (Exhibit E);

4. Defendant Avanessian was in phone contact with Iran approximately 275 times between January 2008 and May 2009, according to documents obtained from telecommunications carriers and from materials seized pursuant to a search warrant;

---

[1] Tomans are commonly and informally used to refer to 10 Rials, which is the official currency of Iran.

6

5. Defendant Avanessian was in e-mail contact over 500 times with individuals believed to be in Iran between January 2008 and January 2009, according to documents seized from defendant Avanessian's computer. Examples of such e-mails are attached hereto as Exhibits A-C, F;

6. Based on defendant Avanessian's passport, he has traveled to Iran at least eight times since 2000, when he obtained Lawful Permanent Resident status. (Exhibit G). Defendant Avanessian, however, had told the Pre-Trial Services Agency before his initial appearance that he only once recently travelled to Iran.

7. Prior to his immigration to the United States, defendant Avanessian had served in compulsory military service, and had worked in a laboratory in Iran. (Exhibit H).

Furthermore, the United States has no extradition treaty (nor normal diplomatic relations) with Iran at this time. If defendant Avanessian were to flee to Iran, he would be beyond the reach of United States law enforcement and would effectively escape prosecution.

Defendant Avanessian argues that he "most tellingly" allowed his Iranian passport to expire. Defendant Avanessian, however, had previously allowed his passport to expire on February 2, 2005. He then received an extension on March 6, 2005. Furthermore, it expired only this week - February 2, 2010 - three weeks after he had been taken into custody. (Exhibit G).

If convicted at trial, defendant Avanessian stands to face a significant amount of time in prison. Pursuant to U.S.S.G.

7

§ 2M5.1(a)(1), defendant's base offense level would be 26, yielding an advisory guidelines sentence of 63-78 months. Section 2M5.1(a)(1) applies "if (A) national security controls or controls relating to the proliferation of nuclear, biological, or chemical weapons or materials were evaded; or (B) the offense involved a financial transaction with a country supporting international terrorism." Defendant Avanessian would satisfy either subsection. First, the Executive Order initiating the current sanctions regime against Iran expressly stated that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States." See Executive Order 12957 (March 15, 1995) (emphasis added); see also United States v. McKeeve, 131 F.3d 1 (1st Cir. 1997)(holding that the embargo against Libya was a "national security control" and ruling that a base offense level of 26 applied under § 2M5.1 to any goods sent to the embargoed country "whether or not the goods shipped actually are intended for some innocent use"); United States v. Min, No. 99 CR. 875 KTD, 2000 WL 1576890, *2 (S.D.N.Y. Oct. 23, 2000) holding that in violation of embargo against North Korea § 2M5.1(a)(1) applied and that "[t]he nature of the goods, innocuous or other, is not controlling").

If convicted of the money laundering counts, defendant may face a higher sentence with base offense level of 32, depending on the total amount of money laundered through defendant's relevant conduct, yielding an advisory guidelines sentence of 121-151 months, under U.S.S.G. §§ 2S1.1(a)(2), (b)(1)(B)(iii), (b)(2)(B) and 2B1.1(b)(1)(I).

8

Furthermore, if convicted at trial of the offenses alleged in the First Superseding Indictment, defendant would very likely lose his status as a Lawful Permanent Resident. See, e.g., 8 U.S.C. § 1101(a)(43)(D) (defining an aggravated felony to include a violation of 18 U.S.C. § 1956 if the amount of funds was more than $10,000). "An alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States." 8 U.S.C. § 1228(c). When an alien such as defendant Avanessian is convicted of an aggravated felony, "the Attorney General shall provide for the initiation and, to the extent possible, the completion of removal proceedings, and any administrative appeals thereof, in the case of any alien convicted of an aggravated felony before the alien's release from incarceration for the underlying aggravated felony." Id. § 1228(a)(3)(A). If defendant Avanessian would simply be deported following a conviction and serving whatever sentence the Court imposed, he has significant incentive to flee to Iran before sustaining a conviction and spending time in prison.

Defendant Avanessian offers to post at least three properties with total value of over one million dollars. (Motion at 5.) Defense counsel has offered to give further details concerning the value, ownership, and location of those properties, but as of the filing of this Opposition the government does not have those details. Even with that information, that value alone would not secure defendant's appearance at trial. Though approximately $500,000 in overseas wire transfers received by defendant Avanessian are charged in the First Superseding Indictment, he received in excess of

9

$1,000,000 of overseas wire transfers since 2006. Whatever the identity of the source of defendant's overseas wires, it appears to have the resources to absorb the loss of equity in the proposed properties.

**D.  Defendant Poses a Danger to the Community**

Defendant argues that the items he exported were available on eBay and other Internet sites. (Motion at 4). Though some of the parts defendant purchased and exported were available on eBay, the parts defendant was charged with exporting were purchased directly from vacuum-pump part suppliers and manufacturers. Furthermore, defendant represented to some manufacturers or suppliers that he would not be exporting them from the United States, let alone to Iran. (Exhibit I).

As set forth in Executive Order No. 12957 (Mar. 15, 1995) "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States." Sending any materials to Iran assists a regime that presents a danger to the national security of the United States.

The materials at issue in this case, the vacuum-pump parts purchased and exported by defendant Avanessian, are not just any materials and have a number of advanced technological applications. The government is continuing to evaluate the possible and likely uses of the vacuum-pump parts that defendant Avanessian purchased and exported to Iran, but they are by no measure the equivalent of "cement." (Motion at 4; see, e.g., Exhibit F.)

In February of 2009, a shipment defendant Avanessian was sending to Iran via the U.A.E. was seized at the freight forwarder. Following that seizure, federal search warrants were executed on April 17, 2009 at defendant's business and residence. Even after these events, in approximately August or September of 2009, defendant Avanessian or someone else on behalf of the company he operated, XVAC,[2] contacted a vacuum-pump part supplier in order to place an order. (Exhibit J). Given that the investigation has not reflected sales by XVAC to domestic customers, it appears defendant has not ceased the conduct charged in the First Superseding Indictment.

Finally, defendant Avanessian requests a closed hearing to address the Court. (Motion at 4). Without information as to the nature of the information the defense intends to present to the Court, the government objects to a closed hearing, though the government anticipates that certain matters may be appropriate to address at sidebar.

## IV

## CONCLUSION

As former President Clinton stated in Executive Orders Nos. 12957 (Mar. 15, 1995) and 12959 (May 6, 1995), the actions and policies of the Government of Iran present an "unusual and extraordinary threat to the national security," and set forth the regulations that defendant Avanessian is charged with violating in the First Superseding Indictment.

---

[2] Before his initial appearance, defendant Avanessian had said that he was employed at XVAC for the last year. Defendant Avanessian has in fact been operating XVAC since at least 2006.

11

1  For the reasons set forth herein, the government
2 respectfully requests that this court order defendant detained
3 pending trial.

4 DATED: February 5, 2010           Respectfully submitted,

                                    GEORGE S. CARDONA
                                    Acting United States Attorney

                                    CHRISTINE C. EWELL
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                         /s/
                                    ROZELLA A. OLIVER
                                    ANTHONY J. LEWIS
                                    Assistant United States Attorneys
                                    Narcotics Section

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA